**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **WCI STEEL, INC. et al.,** | ) | **CASE NO.    4:05 CV 1386** |
| | ) | |
| **Appellants,** | ) | |
| | ) | **JUDGE PETER C. ECONOMUS** |
| **v.** | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| **WILMINGTON TRUST COMPANY** | ) | **ORDER** |
| *as Successor Indenture Trustee and* | ) | |
| *Other Members of an Ad Hoc* | ) | |
| *Unofficial Committee of Noteholders,* | ) | |
| **et al.,** | ) | |
| | ) | |
| **Appellees.** | ) | |
| | ) | |

-----------------------------------------------)-----------------------------------------------------

| | | |
|---|---|---|
| **THE RENCO GROUP, INC.,** | ) | **CASE NO.    4:05 CV 1388** |
| | ) | |
| **Appellant,** | ) | |
| | ) | **JUDGE PETER C. ECONOMUS** |
| **v.** | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| **WILMINGTON TRUST COMPANY** | ) | **ORDER** |
| *as Successor Indenture Trustee and* | ) | |
| *Other Members of an Ad Hoc* | ) | |
| *Unofficial Committee of Noteholders,* | ) | |
| **et al.,** | ) | |
| | ) | |
| **Appellees.** | ) | |

    The above captioned appeals arise from an order of the United States Bankruptcy

Court for the Northern District of Ohio (Shea-Stonum, J.) (the "Bankruptcy Court") denying confirmation of two separate Chapter 11 plans of reorganization: (i) the Debtors' Third Amended Plan of Reorganization (the "Debtors Plan"); and (ii) the Secured Noteholders Plan of Reorganization (the "Noteholders Plan").  In Case number 4:05 CV 1386, Appellant, the Debtors[1], appeal the Bankruptcy Court's denial of confirmation of the Debtors Plan.  In Case number 4:05 CV 1388, Appellant, the Renco Group, Inc.[2] ("Renco"), also appeals the Bankruptcy Court's denial of confirmation of the Debtors Plan.  The Appellee in each appeal is the Secured Noteholders.[3]

This matter is before the Court upon the Secured Noteholders' Motion to Dismiss the Appeals Filed by WCI Steel, Inc. and the Renco Group, Inc. (4:05 CV 1386, Dkt. #15; 4:05 CV 1388, Dkt. #15).

## I. FACTUAL BACKGROUND[4]

Appellant, WCI Steel, Inc. ("WCI") and certain of its affiliates[5] (collectively, the

---

[1]The Debtors consist of WCI Steel, Inc. ("WCI") and wholly-owned direct and indirect subsidiaries of WCI.

[2]Renco is the indirect owner and sole equity holder of the Debtors.

[3]The Secured Noteholders are, collectively, Wilmington Trust Company as successor indenture trustee together with holders of approximately $275 million principal face value of the Debtors' 10% Senior Notes due 2004 (the "Secured Notes") and 23 institutions listed in a filing with the Bankruptcy court under Bankruptcy Rule 2019.

[4]The facts are derived solely from the Bankruptcy Court's opinion unless otherwise noted.

[5]The affiliated debtor subsidiaries are WCI Steel Metallurgical Service, Inc., WCI Steel Production Control Services, Inc., WCI Steel Sales L.P., Youngstown Sinter Company and Niles Properties, Inc.

"Debtors") operate an independent steel mill in Warren Ohio.  Appellant, the Renco Group, Inc. ("Renco") purchased the assets of the Debtors in 1988 for a total purchase price of approximately $66 million.  In November 1996, the Debtors issued to Appellee, the Secured Noteholders, a series of notes $300 million face amount due 2004 and secured by substantially all of the Debtors' real property, plant and equipment.

On September 16, 2003 the Debtors filed petitions for relief under Chapter 11 of the Bankruptcy Code.  At present, the Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to §§ 1107 and 1108.[6]

Pursuant to § 1121 the Debtors, after filing under Chapter 11, enjoyed an exclusive period to file a reorganization plan and solicit votes in support thereof.  In December 2003 the Bankruptcy Court, over the objection of the Secured Noteholders, granted the Debtors' request to extend this exclusive period through July 14, 2004.  On March 26, 2004, the Secured Noteholders filed a motion to terminate the Debtors' exclusive period and represented that they had formulated their own proposed plan of reorganization.  The Debtors eventually consented to termination of the exclusive period, and on May 11, 2004, the Bankruptcy Court entered a Stipulated and Agreed Order terminating the exclusive period.  That same day, the Secured Noteholders filed a proposed plan of reorganization—the Noteholders Plan.  In coordination with the Debtors, the solicitation and confirmation of the two Chapter 11 plans were aligned so that the competing plans moved forward on the same

---

[6]Unless otherwise noted, all statutory section references are to Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

3

timetable. On June 14, 2004 the Bankruptcy Court approved disclosure statements for each of the competing plans. Thereafter, the identified creditor classes were asked to vote to accept or reject both the Debtors Plan and the Noteholders Plan.

The Debtors Plan is a so-called new value plan. It provides that Renco would receive all of the equity in the reorganized company, in exchange for which Renco would provide the following in consideration: (i) $35 million in cash investment in the reorganized debtors; (ii) a new collective bargaining agreement ("CBA") (reached through extensive negotiations with the USWA); (iii) assumption of existing WCI pension liabilities; and (iv) a promise to make additional contributions of up to $15 million from 2006 to 2014, depending on the future earnings of the new company.

The Noteholders Plan is not a new value plan. It places all of the equity of the reorganized company with the creditors, and WCI's assets would be contributed to a new corporation, the stock of which would be distributed together with other assets to the creditors. The Noteholders Plan, despite extensive negotiations with the USWA and PBGC, contains no CBA, nor does the plan provide for assumption of prepetition liabilities in connection with the Debtors' Pension Plan.

Upon completion of voting, both plans failed to be accepted by each identified class of creditors. The Debtors Plan failed to pass two impaired classes: Class 2, the Secured Noteholders claims, and Class 7, Other Unsecured Claims. The Noteholders Plan also failed to pass all of the identified classes.

Thus, the creditor constituencies failed to approve either plan, and from July through

4

October 2004 the Bankruptcy Court held a series of confirmation hearings regarding the competing plans. During those hearings the Debtors and Renco made, *inter alia*, arguments to the Bankruptcy Court regarding application of the new value exception (or corollary) to the absolute priority rule and interpretation of the U.S. Supreme Court decision <u>Bank of America National Trust and Savings Association v. 203 North LaSalle Street Partnership</u>, 526 U.S. 434 (1999) (<u>North LaSalle</u>). Because the Debtors' and Renco's Responses to the instant Motion to Dismiss make heavy reference to the new value exception and interpretation of <u>North LaSalle</u>, the Court shall elaborate the details of this legal argument.

The Debtors and Renco argued to the Bankruptcy Court that the Debtors Plan could, pursuant to § 1129(b), be imposed on the dissenting, impaired classes of creditors which included the Secured Noteholders. In making this argument the Debtors and Renco asked the Bankruptcy Court to apply the new value exception (or corollary) to the absolute priority rule. The new value exception is a judicially created exception which permits a junior claim or interest holder—generally, a debtor's equity holders and in this case Renco—to contribute new capital pursuant to a plan and, in return to retain an interest or receive property in the reorganized entity. <u>See</u> <u>In re U.S. Truck Co.</u>, 800 F.2d at 581, 588 (6th Cir. 1986). The argument in support being that the old equity holder is receiving its interest in the reorganized debtor, not on account of its prior interest, but rather, based upon its new value contribution. <u>See</u> <u>id</u>. Without application of the new value exception, the Debtors Plan would

5

violate the absolute priority rule contained in § 1129(b)(2)(B)(i).[7]

In <u>North LaSalle</u>, the Supreme Court reviewed the requirements for the new value exception to the absolute priority rule and analyzed the confirmation of a debtor's reorganization plan which gave the old equity owners new equity in the reorganized company. <u>Id</u>. at 442–43. The Court, in doing so, discussed the role of market valuation in evaluating confirmation of a plan of reorganization in accordance with the new value exception. The Debtors and Renco argue that <u>North LaSalle</u> requires only a market valuation for confirmation of a new value plan and that either a market test or termination of an exclusivity period and the submission of competing plans satisfies such a requirement. As discussed *infra*, the Bankruptcy Court ultimately disagreed with this argument, and it is the Bankruptcy Court's interpretation and application of <u>North LaSalle</u> (the "<u>North LaSalle</u> issue") which, among other issues, the Debtors and Renco emphasize as grounds for their appeals.

On December 15, 2004 the Bankruptcy Court entered an Opinion re: Confirmation of Proposed Competing Plans of Reorganization (the "Confirmation Denial Opinion") pursuant to which it determined that both plans had failed to meet the requirements necessary for confirmation. The Bankruptcy Court noted that its opinion was interlocutory and also

_____

[7]§ 1129(b)(2)(B) provides that a plan of reorganization rejected by a class of impaired, unsecured creditors may be found to be "fair and equitable" only if the allowed value of the claim is to be paid in full, § 1129(b)(2)(B)(i), or, in the alternative, if "the holder of any claim or interest that is junior to the claims of such [an impaired, unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property," § 1129(b)(2)(B)(ii). This later condition is known as the absolute priority rule. <u>North LaSalle</u>, 526 U.S. at 441–42.

6

mandated that the primary creditor constituencies in the bankruptcy cases seek to reach a consensual resolution.  After all parties reported on a deadlock in these negotiations, the Bankruptcy Court issued a Supplement to Opinion re: Confirmation on April 14, 2005 (the "Supplemental Confirmation Denial Opinion") as well as an Order re: Opinion re: Confirmation and Lifting Moratorium with respect to the Filing of Competing Plans of Reorganization" (the "Confirmation Denial Order").

The Confirmation Denial Opinion and the Supplemental Confirmation Denial Opinion set for the following grounds for denying confirmation of the Debtors Plan:

> A. The Debtors Plan Violated § 1129(b) because Renco is retaining 100 percent of the Debtors' new equity while failing to contribute new value that is worth the reasonably equivalent value of such equity. Specifically, a market valuation was insufficient to satisfy the new value exception (a rejection of the Debtors' and Renco's North LaSalle argument that either market testing or termination of the exclusivity period and submission of competing plans satisfies the new value exception); Renco's new value contributions are insufficient; and the Debtors Plan is unfair and inequitable to Class 7 creditors.

> B. The Debtors Plan is not confirmable because its payment on the Secured Noteholders' claims—a distribution of $94 million in new 9 % 10 year notes—does not comply with the requirements of § 1129(b)(2)(A). This finding involved the Bankruptcy Court's review of factual findings regarding the value of the Debtors' real property, plant and equipment securing the Secured Noteholders' notes.

> C. The Debtors Plan unfairly discriminates against the Secured Noteholders in violation of § 1129(b). Specifically, the Debtors classified similar claims differently solely to gerrymander an affirmative vote on the Debtors Plan.

The Confirmation Denial Opinion also stated the following grounds for denying confirmation of the Noteholders Plan: Due to the lack of a negotiated CBA and failure to

assume pension liabilities, the Noteholders Plan fails to provide an adequate and feasible means for implementation. Specifically, the Secured Noteholders failed to prove that confirmation of the Noteholders plan is not likely to be followed by liquidation or the need for further financial reorganization of the debtor.

The Debtors appealed the denial of confirmation of the Debtors Plan. Renco also appealed the denial of confirmation of the Debtors Plan.[8] [9]

On June 21, 2005 the Secured Noteholders filed a motion to dismiss both the Debtors' and Renco's appeals. The bulk of the argument in the motion to dismiss was devoted to the Debtors' and Renco's failure to challenge every ground upon which the Bankruptcy Court denied confirmation of the WCI Plan. (4:05 CV 1386, Dkt. #15; 4:05 CV 1388, Dkt. #15). The Court, meanwhile, held a Status Conference for purposes of discussing a proposed briefing schedule of the three pending appeals. During the Status Conference, the Court brought the motion to the attention of the Debtors and Renco. Upon assurance from the Debtors and Renco that they would amend their appeals accordingly, the Court granted

_____

[8]The Court notes that a third appeal has resulted from the Bankruptcy Court's Confirmation Denial Opinion, that of the Secured Noteholders appealing the denial of the Noteholder's Plan. See Secured Noteholders v. WCI Steel (In re: WCI Steel), Case No. 4:05 CV 1866. Jurisdiction over that appeal is not presently at issue before the court, although it may be implicated by the Court's analysis.

[9]The Debtors and Renco argue that, by filing a notice of appeal rather than a motion for leave to appeal, the Secured Noteholders expressly recognize that the Confirmation Denial Order is a final order appealable as of right. The Court disagrees. The Secured Noteholders have also appealed from the same Confirmation Denial Order in the event that the Court determines to hear the Debtors' and Renco's appeals. The Secured Noteholders' appeal in no way concedes that the Confirmation Denial Order is a final order or that the Debtors and Renco should be permitted to pursue an interlocutory appeal.

8

the Debtors and Renco leave to amend their respective briefs to address all the grounds upon which the Bankruptcy Court had based its denial of confirmation.  (4:05 CV 1386, Dkt. #18; 4:05 CV 1388 Dkt. #18).  The parties, thereafter, amended their briefs and complied with the detailed briefing schedule.  Oral argument concerning all three appeals was held on August 19, 2005.

Despite the Debtors' and Renco's submission of amended appeals addressing each ground for denial in the Bankruptcy Court's Confirmation Denial Order, the Secured Noteholders maintain their Motion to Dismiss arguing that this Court lacks jurisdiction to consider the appeals because the Debtors and Renco are improperly seeking review of an interlocutory order of the bankruptcy court.  (4:05 CV 1386, Dkt. #32; 4:05 CV 1388, Dkt. #28).

## II.  LAW AND ANALYSIS

This Court has jurisdiction to hear appeals from a bankruptcy court pursuant to 28 U.S.C. § 158(a), which states in pertinent part:

> The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees;…and with leave of the court, from interlocutory orders and decrees, of bankruptcy judges.

Thus, under Section 158(a), final orders may be appealed as a matter of right, and interlocutory orders may be appealed only with leave of the court.  Accordingly, the Court must first consider whether the Bankruptcy Court's Confirmation Denial Order was a final

order.[10]

The Sixth Circuit, like many courts, takes a relaxed view of "finality" for bankruptcy orders as compared with orders issued by the district court. See In re Dow Corning, 86 F.3d 482, 488 (6th Cir. 1996); In re Cottrell, 876 F.2d 540, 541–42 (6th Cir. 1989); accord In re Urban Broadcasting Corp., 401 F.3d 236, 246–47 (4th Cir. 2005); In re Olshan, 356 F.3d 1078, 1082–83 (9th Cir. 2004); In re Natale, 295 F.3d 375, 378–79 (3d Cir. 2002); Irvin v. Lincoln Heritage Life Ins. Co., 950 F.2d 1318, 1319 (7th Cir. 1991); In re Saco Local Development Corp., 711 F.2d 441, 444–4646 (1st Cir. 1983). The final order requirement is considered "in a more pragmatic and less technical way in bankruptcy cases than in other situations." Cottrell, 876 F.2d at 541–42. The reason for a more relaxed rule of appealability in bankruptcy cases is that:

[b]ankruptcy cases frequently involve protracted proceedings with many parties

---

[10]The Debtors and Renco note that the Secured Noteholders' motion to dismiss is largely premised upon the Debtors and Renco's failure to appeal each ground upon which the Bankruptcy Court based its Confirmation Denial Order. The Debtors and Renco argue that their amended appeals now moot this argument and that the Court, therefore, should deny the Motion to Dismiss in its entirety. (4:05 CV 1386, Dkt. #30 at 5; 4:05 CV 1388, Dkt. #23 at 2). The Secured Noteholders assert that the grounds for appeal added to the Debtors' and Renco's briefs are frivolous. (4:05 CV 1386, Dkt. #302at 4; 4:05 CV 1388, Dkt. #28 at 4). These arguments concern the application of the Federal Rules of Bankruptcy Procedure. See In re Brown Family Farms, Inc., 872 F.2d 139, 141 (6th Cir. 1989) (finding district court did not abuse its discretion, under Bankruptcy Rules 8001 and 8010, in dismissing an appeal for failure by the appellant to challenge each independent ground forming the basis of the bankruptcy decision). This Court's jurisdiction, however, rests on 28 U.S.C. § 158(a). Accordingly, the Court shall first determine whether the Confirmation Denial Order is appealable under Section 158(a). Only if jurisdiction exists pursuant to Section 158(a), will the Court find it necessary to examine the parties' compliance with the Federal Rules of Bankruptcy Procedure.

participating. To avoid the waste of time and resources that might result from reviewing discrete portions of the action only after a plan of reorganization is approved, courts have permitted appellate review of orders that in other contexts might be considered interlocutory.

Dow Corning, 86 F.3d at 488 (quoting A.H. Robins CO. v. Piccinin, 788 F.2d 994, 1009 (4th Cir. 1986)) (internal quotations omitted).

Thus, a bankruptcy order is final for purposes of appeal when it "disposes of discrete disputes within the larger case." Dow Corning, 86 F.3d at 488 (citing In re Saco Local Dev. Corp., 711 F.2d 441, 444 (1st Cir.1983)). "To be final, a bankruptcy order need not resolve all of the issues in the proceeding, but it must finally dispose of all the issues pertaining to a discrete dispute within the larger proceeding." In re Perry, 391 F.3d 282, 285 (1st Cir. 2004) (citing In re Saco Local Dev. Corp., 711 F.2d at 445–46). See also In re Rimsat, Ltd., 212 F.3d 1039, 1044 (7th Cir. 2000) ("Where an order terminates a discrete dispute that, but for the bankruptcy, would be a stand-alone suit by or against the trustee, the order will be considered final and appealable.").

The Confirmation Denial Order, from which both the Debtors and Renco appeal, denied confirmation of two competing Chapter 11 plans of reorganization; however, it did not dismiss the bankruptcy proceeding. The Sixth Circuit has not addressed the issue of jurisdiction in a case such as that *subjudice*, where a debtor's plan was not confirmed, but the bankruptcy proceedings had not been dismissed. Although the Sixth Circuit previously has considered an appeal from the rejection of a Chapter 13 plan, it did so without addressing the issue of jurisdiction and finality of the appealed order. See Hardy v. CINCO Fed. Credit

11

Union (In re Hardy), 755 F.2d 75, 76 (6th Cir. 1985).  See also In re Hance, No. 99-6405, 2000 WL 1478390, *3 n.9 (6th Cir. Oct. 4, 2000) ("In Hardy v. CINCO Fed. Credit Union…this court considered an appeal from a denial of the confirmation of a debtor's Chapter 13 plan with no acknowledgment of a jurisdictional problem.  We express no opinion on Hardy as it relates to jurisdiction.  Since jurisdiction was not discussed in Hardy, that decision is not binding upon us here.").

Courts considering the issue of jurisdiction, generally have held that where a bankruptcy court denies or withholds confirmation of a reorganization plan, without also dismissing the entire proceedings, the order is not final for purposes of appeal.  See Lievsay v. Western Fin. Sav. Bank (In re Lievsay), 118 F.3d 661, 662 (9th Cir. 1997) (finding a bankruptcy court's decision denying confirmation of a Chapter 11 plan was interlocutory); Flor v. BOT Fin. Corp. (In re Flor), 79 F.3d 281, 283 (2d Cir. 1996) (concluding that denial of a confirmation of a Chapter 11 plan is non-final); Lewis v. U.S. Farmers Home Admin., 992 F. 2d 767, 772 (8th Cir. 1993) (holding that a bankruptcy order neither confirming a plan nor dismissing the underlying petition is non-final); In re Pleasant Woods Assocs. Ltd. Partnership, 2 F.3d 837, 838 (8th Cir. 1993)  (dismissing appeal from denial of confirmation of Chapter 11 plan); Simons v. Federal Deposit Ins. Corp. (In re Simons), 908 F.2d 643, 645 (10th Cir. 1990) (holding that order denying confirmation of proposed Chapter 13 plan without dismissal of underlying petition or case was non-final); Maiorino v. Branford Sav. Bank, 691 F.2d 89, 91 (2d Cir. 1982) (finding denial of confirmation of Chapter 13 plan was not a final order).

Where a denial of confirmation does not terminate the bankruptcy case or conclusively adjudicate a debtor's ability to reorganize, such an order is non-final.  See Simons, 908 F.2d at 645.  "[S]o long as the bankruptcy proceeding itself has not been terminated, the debtor, unsuccessful with one reorganization plan, may always propose another plan for the bankruptcy court to review for confirmation."  Id.  "Under these circumstances, the parties' rights have not been finally determined and the process of plan confirmation is continuing."  Rady v. Robert Bros., No. 1:02-CV-1284-LJM-WTL, 2003 WL 21180694, *1, (S.D. Ind. Apr. 23, 2003); accord In re Flor, 79 F.3d at 283 ("That Debtors are free to propose an alternate plan demonstrates that all of the issues are not finally resolved.").

Consistent with these decisions, the Bankruptcy Court, in its accompanying opinion, emphasized that its findings were interlocutory.  (Denial of Confirmation Opinion at 57) ("[T]he rulings being announced in this Opinion are interlocutory in nature.  Thus, the only appeals that would be appropriate of the orders denying confirmation would be interlocutory appeals.").[11]

Nevertheless, the Debtors and Renco argue that the Bankruptcy Court's rejection of their legal position regarding application of the new value exception and interpretation of

---

[11]The Debtors argue that the Bankruptcy Court, during an April 1, 2005 hearing, recognized that its Confirmation Denial Order is appealable by stating, "So you can file your notice of appeal."  See (4:05 CV 1386, Dkt. #23 at 5).  From the context of the Hearing transcript it is evident that this statement was an acknowledgment of the Debtors intent to file an appeal.  There lacks any supporting evidence in the record that the Denial of Confirmation Order is a final order.  See (Id. at Exhibit 1, April 1, 2005 Hearing Transcript).

North LaSalle requires that this Court determine the Confirmation Denial Order to be a final order.  See Hylland v. Northwestern Corp (In re Northwestern Corp.), 319 B.R. 68, 73 (D. Del. 2005) (concerning jurisdiction over an order denying a motion to lift an automatic stay and concluding that where a bankruptcy court considers purely legal issues and rejects a party's legal position, such an order should be considered a final decision); (4:05 CV 1386, Dkt. #30 at 10; 4:05 CV 1388, Dkt. #23 at 10).

In support of this argument, the Debtors and Renco rely on a series of cases where a district court accepted jurisdiction over an appeal from a bankruptcy court order where a primary issue was the new value exception to the absolute priority rule.  (4:05 CV 1386, Dkt. #30 at 10–12).  These cases, however, either do not concern appeals from a confirmation order, Bonner Mall Partnership v. U.S. Bancorp. Mortgage Co. (In re Bonner Mall Partnership), 2 F.3d 899, 903–05 (9th Cir. 1993) (accepting jurisdiction over a district court reversal of a final order of a bankruptcy court that remanded the case for further factual determinations by the bankruptcy court), or fail to directly address the issue of jurisdiction, Unruh v. Rushville State Bank (In re Drimmel), 987 F.2d 1506 (10th Cir. 1993);  In re Snyder, 967 F.2d 1126 (7th Cir. 1992).  Instead, these cases concern instances in which the underlying bankruptcy case has been effectively terminated.  See Bonner Mall, 2 F.3d at 903; In re Snyder, 967 F.2d at 1127.

Confirmation denials which fail to dismiss the underlying bankruptcy case are non-final, especially where a bankruptcy court may yet adjudicate a debtor's ability to reorganize. For example, the Fifth Circuit has recognized that a denial of a reorganization plan *can* be a

14

final order. <u>See</u> <u>Bartree v. Tara Colony Homeowners Ass'n</u>, 212 F.3d 277, 283 (5th Cir. 2000). The court, however, qualified this recognition by opining that "if the [denial of confirmation] order was not intended to be final—for example, if the order addressed an issue that left the debtor able to file an amended plan (basically to try again)—appellate jurisdiction would be lacking." <u>Id</u>. at 283. <u>See</u> <u>In re Snyder</u>, 967 F.2d 1126, 1127 (7th Cir. 1992) (failing to address the issue of appellate jurisdiction, but considering the merits of an appeal from an order in which the bankruptcy court denied confirmation of competing Chapter 11 plans and ordered the Chapter 11 proceedings dismissed).

The analysis in <u>Bartree</u> is consistent with the liberal standard for evaluating finality in bankruptcy decisions. For, when a bankruptcy proceeding remains open,—especially when parties are free to refile confirmation plans—there can be no final disposition of the discrete issue of plan confirmation.[12] <u>Dow Corning</u>, 86 F.3d at 488; <u>In re Perry</u>, 391 F.3d at 285. <u>See</u> <u>In re Watson</u>, 309 B.R. 652, 647 (1st Cir. BAP 2004) (finding order was interlocutory and only decided an intervening matter pertaining to confirmation where further steps were

---

[12]The Debtors' and Renco's arguments categorize the "discrete dispute" at issue as their legal position regarding application of <u>North LaSalle</u> and the new value exception. The <u>North LaSalle</u> issue, however, is one of many other issues (i.e. the unfair and inequitable treatment of Class 7 Members, the insufficient payment on the secured Noteholders' claims, the improper gerrymandering of similar claims) decided by the Bankruptcy Court in an order concerning a dispute over plan confirmation. Although a determination by the Court regarding application of <u>North LaSalle</u> may, as the Debtors and Renco suggest, alter the course of confirmation proceedings before the Bankruptcy Court, it would not finally dispose of the issue of plan confirmation, the discrete dispute which is the subject of the Confirmation Denial Order. The Debtors' and Renco's assertions as to the controlling nature of the <u>North LaSalle</u> issue are more applicable to their arguments regarding discretionary review, discussed <i>infra</i>.

required in order to enable the bankruptcy court to adjudicate the matter of confirmation); Bentley v. Boyajian (in re Bentley), 266 B.R. 229 (1st Cir. BAP 2001) (finding that a denial of confirmation of a proposed Chapter 13 plan was not a final order where the debtor was free to propose an alternate plan).

Unlike Bartree , the Bankruptcy Court has not issued a final order disposing of the underlying bankruptcy case—the Confirmation Denial Order does not dismiss WCI's bankruptcy petition and thereby does not preclude the parties from submitting revised plans of reorganization.[13]  Instead, the Bankruptcy Court throughout its Opinions and Order encourages the parties to revise and resubmit plans of reorganization.  Thus, because the parties are free to propose new plans of reorganization to the Bankruptcy Court, the Confirmation Denial Order does not finally dispose of all the issues pertaining to the discrete dispute of plan confirmation.  Indeed, under the liberal bankruptcy standard of finality, the Confirmation Denial Order is not a final order.

The Debtors and Renco next argue that the Confirmation Denial Order may be appealed as a matter of right under the collateral order doctrine.  See Rockwell Int'l Corp. v. White Motor Cor. (In re White Motor Corp.), 25 B.R. 293, 295 (N.D. Ohio 1982) ("[M]atters which otherwise might have been considered interlocutory have been deemed final and appealable under the 'collateral order doctrine'"); see also Dow Corning, 86 F.3d at 488 (recognizing applicability of collateral order doctrine in determining finality of circuit

---

[13]Indeed, the Debtors, during oral argument, acknowledged that they have submitted a new plan of reorganization currently undergoing consideration before the Bankruptcy Court.

court's review of an order by a district court sitting in bankruptcy).

The collateral order doctrine permits immediate appellate review of decisions that "finally determine claims of right separable from and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949). Under the collateral order doctrine, an order is considered final for appeal purposes where "it: (1) conclusively determines the disputed question; (2) resolves an important question completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from final judgment." Dow Corning, 86 F.3d at 488 (citing Pacor, Inc. v. Higgins, 743 F.2d 984, 988 (3d Cir. 1984) and Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978)); accord Simon v. Pfizer Inc., 398 F.3d 765, 771 (6th Cir. 2005). "These three factors are equally fluid and are applied flexibly in determining whether an order involving a bankruptcy proceeding is reviewable." Dow Corning, 86 F.3d at 488 (citing In re Pan Am Corp., 16 F.3d 513, 515 (2d Cir.1994). However, "'a party seeking to appeal on this basis must show that all three requirements of the doctrine are satisfied.'" Simons, 908 F.2d at 644 (quoting In re Magic Circle Energy Corp., 889 F.2d 950, 954 (10th Cir. 1989)).

The collateral order doctrine is a narrow exception to the general rule regarding finality of judgments. See Manion v. Evans, 986 F.2d 1036, 1038–39 (6th Cir. 1993). It has been applied to allow immediate appeal of orders granting or denying qualified immunity, Skousen v. Brighton High Sch., 305 F.3d 520, 525 (6th Cir. 2002), compelling a non-party

17

to produce allegedly privileged material, FDIC v. Ogden Corp., 202 F.3d 454, 459–460 (1st Cir. 2000); denying counsel's motion to withdraw, Whiting v. Lacara, 187 F.3d 317, 319–320 (2d Cir. 1999); transferring venue in a tort litigation, Pan Am Corp., 16 F.3d at 515; and appointing a special master to dispose of product liability claims, White Motor Corp., 25 B.R. at 295. The Court, however, is aware of no instances in which the collateral order doctrine has been applied to an order denying confirmation of a reorganization plan. Cf. Simons, 908 F.2d at 645 (finding collateral order doctrine inapplicable to order denying confirmation of a reorganization plan); Rady, 2003 WL 21180694, at*1 (same); In re Mcorp Fin., Inc., 139 B.R. 820, 824 (S.D. Tex. 1992) (same).

Moreover, the Confirmation Denial Order fails to meet the requirements of the collateral order doctrine. First, the Order fails to conclusively determine any issue, because the parties have the opportunity to submit a new proposed plan. See Rady, 2003 WL 21180694, at *2. Second, confirmation of a reorganization plan is not an independent issue from the rest of the case; it is the case. See In re Mcorp, 139 B.R. at 824. Finally, the Order is not effectively unreviewable. An order is effectively unreviewable if it "involves an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." Lauro Lines S.R.L. v. Chasser, 490 U.S. 495, 499 (1989); accord Manion, 986 F.2d at 1038. Thus, the point of the collateral order doctrine is to allow an appeal where the harm of the order could not be remedied on appeal from a final order. See In re Carlson, 224 F.3d 716, 717 (7th Cir. 2000). An order denying confirmation is not "effectively unreviewable;" it may be reviewed on appeal from a final order approving an

18

alternative plan or dismissing the underlying bankruptcy case.  See Simons, 908 F.2d at 644; see also Rady, 2003 WL 21180694, at *1.  The propriety of the Bankruptcy Court's rulings within the Confirmation Denial Order, including the North LaSalle issue, while not immediately reviewable, will, however, be reviewable on an appeal from a final judgment either confirming or denying an alternate plan.

The Debtors and Renco argue that in the Confirmation Denial Order the Bankruptcy Court conclusively determined not to apply the market testing process discussed in North LaSalle, and that in doing so the Bankruptcy Court adopted a process of judicial assessment of valuation which irreparably harms the Debtors and Renco by forcing them to expend substantial amounts of money in a confirmation process that may be infirm.  This type of harm, is not, however, the "irreparable harm" the narrowly applied collateral order doctrine seeks to vindicate.  Rather, the "irreparable harm" contemplated by the collateral order doctrine is that which results from "trial court orders affecting rights that will be irretrievably lost in the absence of an immediate appeal."  Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 430–31 (1985).

The "effectively unreviewable" requirement requires a court to "ascertain whether an important right will be lost, probably irreparably, if review must await a final judgment."  United States v. Levine, 658 F.2d 113, 124–25 (3d Cir. 1981).  Rather than concentrating on the issue of whether any of their rights will be irreparably lost, the Debtors and Renco focus on the harm caused to them by a judicial valuation process.  In effect, the Debtors and Renco argue that if appeal is only permitted after the reorganization proceeding and the Court then

concludes that the Confirmation Denial Order was in error, substantial time and money will have been wasted.  These litigation burdens do not, however, constitute irreparable harm.  See Bonner Mall, 2 F.3d at 904 n.12; see also First American Bank of New York v. Southwest Gloves, 64 B.R. 963, 965–66 (D. Del.1986)

Accordingly, the Confirmation Denial Order fails to meet the requirements of the collateral order doctrine, and the Order is not appealable as of right.  The Court concludes that the Confirmation Denial Order is a non-final order to which the collateral order doctrine does not apply.  The Order, therefore, is an interlocutory order and may only be appealed with leave of the Court.  28 U.S.C. 158(a)(3).[14]

Lastly, the Debtors and Renco argue that even if the Bankruptcy Court's Denial of Confirmation Order is interlocutory, it is well within the Court's discretion to allow them leave to appeal the Confirmation Denial Order on an interlocutory basis.[15]

As stated *supra*, a court may grant leave to appeal an interlocutory order under 28 U.S.C. § 158(a)(3).  Typically, federal courts are reluctant to hear interlocutory appeals.  See

---

[14]The Debtors and Renco also advocate application of the "capable of repetition, yet evading review" doctrine as an alternative means for the Court to exercise jurisdiction.  This doctrine is an exception to the mootness doctrine and is wholly inapplicable to the instant appeals.  See Spencer v. Kemna, 523 U.S. 1, 17–18 (1998); Coalition for Government Procurement v. Federal Prison Industries, Inc., 365 F.3d 435, 458–61, 473 n. 54 (6th Cir. 2004).

[15]Under 28 U.S.C. § 158(a)(3), parties who wish to challenge an interlocutory order must seek leave from the bankruptcy court by filing a motion for leave to appeal.  FED. R. BANKR. P. 8003(a).  In this instance, the Court shall construe the parties notices of appeal as motions for leave to appeal.  See Moix-McNutt v. Coop (In re Moix-McNutt), 215 B.R. 405, 407 (8th Cir. BAP 1997).

Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 374 (1981).  Such leave "should be granted with discrimination and reserved for cases of exceptional circumstances." Personette v. Kennedy ( In re Midgard Corp.), 204 B.R. 764, 769 (10th Cir. BAP. 1997); accord Cardwell v. Chesapeake and Ohio Railway Co., 504 F.2d 444, 446 (6th Cir. 1974); Bradford v. Bradford & Co. (In re Bradford), 192 B.R. 914, 916 (E.D. Tenn. 1996); City Bank & Trust Co. v. Stiles (In re Stiles), 29 B.R. 389, 390 (M.D. Tenn. 1982).

Section 158(a)(3) provides no express criteria to guide a court's discretion, therefore, in deciding whether to review an interlocutory appeal, federal courts have relied, by analogy, on 28 U.S.C. § 1292(b) which governs interlocutory appeals from district courts to courts of appeal.  See U.S. Trustee v. Eggleston Works Loudspeaker Co. (Eggleston Works Loudspeaker Co.), 253 B.R. 519, 521 (6th Cir. BAP. 2000).  In applying § 1292(b), the Sixth Circuit requires that four elements be met: (1) The question involved must be one of "law"; (2) It must be controlling; (3) There must be substantial ground for "difference of opinion" about it; and (4) An immediate appeal must materially advance the ultimate termination of the litigation. See In re M.T.G., Inc., 298 B.R. 310, 314 (E.D. Mich. 2003) (citing Cardwell v. Chesapeake & Ohio Ry. Co., 504 F.2d 444, 446 (6th Cir. 1974)).  Accord In re Kruckenberg, 160 B.R. 663 (D. Kan. 1993); In re MCorp. Financial, Inc., 139 B.R. 820, 823 (S.D. Tex. 1992 ); In re PHM Credit Corp., 99 B.R. 762, 767 (E.D. Mich. 1989); In re Beker Indus. Corp., 89 B.R. 336 (S.D.N.Y. 1988);  Watson v. Boyajian, 309 B.R. 652 (1st Cir. BAP. 2004).

In the present appeals, one of the issues sought to be determined by the Appellants,

21

is the legal question of to what degree North LaSalle recognizes (or mandates) market valuation of new value plans. This question of law, the North LaSalle issue, satisfies the first and third elements: the issue is one of law[16] and, as well demonstrated during the parties' oral argument, a substantial difference of opinion exists regarding interpretation of North LaSalle. See in re Union Financial Servs. Group, Inc., 303 B.R. 390 (Bankr. E.D. Mo. 2003). Whether the North LaSalle issue can meet the second element, i.e., whether it can be "controlling," is less clear. "A legal issue is controlling if it could materially affect the outcome of the case." In re City of Memphis, 293 F.3d 345, 351 (6th Cir. 2002) (citing In re Baker & Getty Fin. Servs., Inc. v. Nat'l Union Fire Ins. Co., 954 F.2d 1169, 1172 n. 8 (6th Cir.1992)). See also Watson, 309 B.R. at 659 (citing Fleet Data Process Corp. v. Branch (In re Bank of New England Corp.), 218 B.R. 643, 645 (1st Cir. BAP 1998)) ("An order involves a controlling question of law where the bankruptcy court's ruling presents a question of law that controls the outcome of the underlying case.").

The Debtors and Renco contend that "for a question to be controlling, it need not be dispositive," and emphasize the fourth factor, arguing that "a question is controlling if resolution of the questions will advance the ultimate resolution of the litigation." The Debtors and Renco argue that an immediate appeal will materially advance the ultimate resolution of the litigation by enabling the Bankruptcy Court to apply the market valuation

---

[16]The Court notes, however, that the Bankruptcy Court, in evaluating the marketing process conducted by the Debtors prior to plan confirmation, did engage in a factual determination as to whether the Debtors' marketing efforts were sufficient.

standard discussed in <u>North LaSalle</u>.  They also assert that such a decision on remand would avoid unnecessary costly and potentially protracted judicial valuation hearings.  Indeed, "[a] growing number of decisions [have] accepted the rule that a question is controlling, even though its disposition might not lead to reversal on appeal, if interlocutory reversal might save time for the district court, and time and expense for the litigants."  <u>In re Big Rivers Elec. Corp.</u>, 266 B.R. 100, 104–05 (W.D. Kty. 2000) (quoting <u>United States Trustee v. PHM Credit Corp. (In re PHM Credit Corp.)</u>, 99 B.R. 762, 768 (E.D. Mich. 1989)).

The Court finds that even if it were to remand the case with instructions for the Bankruptcy Court to accept a marketing valuation of the Debtors new value plan pursuant to <u>North LaSalle</u>, such a determination of the <u>North LaSalle</u> issue will not materially affect the outcome of the Bankruptcy Court's Confirmation Denial Order, because the order did not rest on merely the issue of interpretation of <u>North LaSalle</u>.  In the Confirmation Denial Order, the Bankruptcy Court relied on several other grounds for denial such as discriminatory classification of creditors and insufficient payment on the Secured Noteholders' claims. Resolution of the <u>North LaSalle</u> issue would not substantially impact the Bankruptcy Court's conclusions regarding these findings.

Although a remand instructing the Bankruptcy Court to cease judicial valuation of the competing plans might save the litigants time and expense, the Court in exercising jurisdiction over these interlocutory appeals would have to do far more than resolve the <u>North LaSalle</u> issue; it would be required to delve into the record to resolve multiple fact-based determinations by the Bankruptcy Court such as whether payment on the Secured

23

Noteholders' claims was sufficient and even, possibly whether the Debtors made a bona fide marketing effort. Additionally, the Debtors and Renco optimistically over-estimate the time and expense a reversal based on the North LaSalle issue would achieve. Assuming arguendo that the Court will reverse the Bankruptcy Court's application of the North LaSalle issue, the Bankruptcy Court may still need to proceed with another round of confirmation hearings based on the other outstanding issues.

As stated *supra*, the decision regarding leave to consider an interlocutory appeal is a matter within the full discretion of the court and should only be granted in exceptional or extraordinary situations. See Cardwell, 504 F.2d at 446; Bradford, 192 B.R. at 916. The Court finds that the degree to which it would have to make determinations beyond the legal issue of interpretation and application of North LaSalle outweighs the saved time and expense a more immediate consideration of the North LaSalle issue would save. Therefore, the Court in its discretion, does not find it appropriate to grant leave to appeal from the Bankruptcy Court's Confirmation Denial Order.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that the Confirmation Denial Order issued by the Bankruptcy Court is an interlocutory order over which the Court declines to exercise jurisdiction. Accordingly, the Court lacks jurisdiction over the Appellant Debtors' and Appellant Renco's appeals, case numbers 4:05 CV 1386 and 4:05 CV 1388, respectively. Appellee, Secured Noteholders' Motion to Dismiss the Appeals Filed by WCI Steel, Inc. and the Renco Group, Inc. (4:05 CV 1386, Dkt. #15; 4:05 CV 1388, Dkt. #15) is **GRANTED**.

24

The Debtors' Amended Appeal, ( 4:05 CV 1386, Dkt. #19), and Renco's Amended Appeal, (4:05 CV 1388, Dkt. #19) are hereby **DISMISSED** for lack of jurisdiction.


      **IT IS SO ORDERED.**

                      */s/ Peter C. Economus* **– 09/23/05**
                      **PETER C. ECONOMUS**
                      **UNITED STATES DISTRICT JUDGE**